*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 3, 2020

Plaintiff-Appellee,

v

No. 345294
Macomb Circuit Court
LC No. 2017-003436-FC

LARRY LONDRA WALKER,

Defendant-Appellant.

Before: REDFORD, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 30 to 50 years' imprisonment for the murder conviction and a consecutive term of two years' imprisonment for the felony-firearm conviction. We affirm.

Defendant's convictions arise from the April 24, 2017 shooting death of 16-year-old Kenneth Cutts, Jr., in Warren, Michigan. Cedric Smith-Cole, then 17 years old, lived on Paige Avenue in Warren, and was good friends with Cutts. Smith-Cole testified that on April 22, 2017, he (Smith-Cole) was involved in a fight with defendant and defendant's friend, Anthony Nelson. Nelson's house was located on Paige, just west of McArthur, and defendant was at Nelson's home on April 24, 2017.

Smith-Cole testified that on April 24, 2017, Cutts was walking over to Smith-Cole's house, which was located east of McArthur Blvd., and it was their usual practice for Smith-Cole to meet Cutts at the nearby corner of Paige and McArthur. Smith-Cole testified that after Cutts passed Nelson's house on the way to McArthur, defendant appeared behind Cutts. Apparently, Cutts owed defendant $10 for a prior purchase of marijuana from defendant. When Smith-Cole notified Cutts of defendant's presence, Cutts turned around and words were exchanged. Defendant purportedly drew a gun from his pants and tapped it toward Cutts's head. Cutts then tried to wrestle the gun away, but when he failed to do so, he ran away toward Smith-Cole. Smith-Cole said that defendant pointed the gun and squinted his eye as if trying to aim, and fired a shot. The shot struck

Cutts in the back of the neck and the bullet exited through his mouth, resulting in his death. Walker then picked up the shell casing from the spent bullet and ran away.

Defendant testified to a different version of events. He denied fighting with Smith-Cole on April 22, 2017. He stated that on April 24, 2017, he was at Nelson's house for a barbeque. At some point, he left to walk to the store by heading east along Paige. According to defendant, when he got past McArthur, he saw Smith-Cole ahead of him, approaching. Just then, although defendant did not know who it was at the time, Cutts jumped him from behind and placed a choke hold on him. While defendant was being choked, Smith-Cole tried to go through defendant's pockets. Defendant tried to break free from the choke hold while simultaneously trying to fend off Smith-Cole. At some point, Smith-Cole felt the gun in defendant's pocket and started to run away. Right then, defendant pulled the gun out from his pocket, spun around to get Cutts off of him, and fired a single shot. Defendant claimed, "I didn't see him. I just shot. I just spint [sic] and shot." But he also stated, "I saw him you know, I shot so fast, and I kept running."

Afterward, defendant made his way to a nearby home on Essex Avenue, which was a few blocks north of Paige. There, he obtained a change of clothes and asked a person there to dispose of some bullets, but the person refused. Defendant left and later went to a house located at 20100 Concord in Detroit. After tracking defendant's location with cell phone data, the police found him at the Concord house hiding in a dryer in the basement.

Although defendant was charged with first-degree premeditated murder, the jury convicted him of the lesser included offense of second-degree murder, as well as felony-firearm, and this appeal followed.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he was denied the effective assistance of counsel by counsel's failure to request a jury instruction on the lesser included offense of voluntary manslaughter. We disagree.

Generally, claims of ineffective assistance of counsel involve a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews a trial court's factual findings, if any, for clear error, and any constitutional determinations are reviewed de novo. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). However, because no evidentiary hearing was held, our review of this issue "is limited to mistakes apparent on the record." *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003).

Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). Generally, to establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Trakhenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). However, such performance must be measured without the benefit of hindsight. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721

(1995). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *LeBlanc*, 465 Mich at 578.

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). Defendant contends that his trial counsel should have requested a jury instruction on the lesser included offense of voluntary manslaughter because "[n]o sound trial strategy existed to not request" the instruction. However, this Court has long recognized that an "all or nothing" strategy may be reasonable. See *People v Robinson*, 154 Mich App 92, 94; 397 NW2d 229 (1986) ("[T]he decision not to request lesser offenses was a matter of trial strategy."); *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982) (holding that defense counsel was not ineffective in failing to request an instruction of a lesser-included instruction because "[t]he decision to proceed with an all or nothing defense is a legitimate trial strategy").

On appeal, defendant does not offer any argument to rebut the strong presumption that counsel employed reasonable strategy. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) ("[T]he defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy."). Instead, he relies on the mere fact that the jury *may* have convicted him of manslaughter instead of murder had it been given that option, but that "fact" is not sufficient. See *LaVearn*, 448 Mich at 216 (stating that counsel's performance is measured without the benefit of hindsight); *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008) ("A failed strategy does not constitute deficient performance."). In sum, defense counsel could have thought that the best chance for an acquittal was to not seek a manslaughter instruction, and this strategy is not objectively unreasonable from our review of the record.

## II. GREAT WEIGHT AND SUFFICIENCY OF THE EVIDENCE

Defendant argues that he is entitled to a new trial because his verdicts were against the great weight of the evidence. To preserve an issue that a verdict was contrary to the great weight of the evidence, a defendant must move for a new trial in the trial court. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). While defendant raised this issue in a motion to remand filed in this Court, he did not raise the issue in an appropriate motion in the trial court and this Court denied his motion to remand. Thus, his great-weight claim is not preserved and we review this claim for plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). "In order to avoid forfeiture under a plain-error analysis, defendant must establish (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights." *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011).

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. [*People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009) (citations omitted).]

With respect to his claim that the evidence was insufficient to support his convictions, a party need not take any steps to preserve that issue. *People v Patterson*, 428 Mich 502, 514; 410 NW2d 733 (1987). A challenge to the sufficiency of the evidence is reviewed de novo by reviewing the evidence in a light most favorable to the prosecution to determine "whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). "All conflicts with regard to the evidence must be resolved in favor of the prosecution. Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005) (citation omitted).

To determine whether defendant's conviction of second-degree murder was against the great weight of the evidence, we look to whether the prosecution has proven the necessary elements: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v Goecke*, 457 Mich 442, 463–64; 579 NW2d 868 (1998). "Malice" is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. at 464.

Defendant has failed to show that the evidence preponderates, let alone heavily preponderates, against his guilty verdict. The first two elements of second-degree murder are undisputed. As to whether defendant acted with malice, the firing of a gun toward another person is easily seen as an act in willful and wanton disregard of the likelihood that the action would cause death or great bodily harm. Considering the fourth element, while defendant testified that he was attacked by Cutts and Smith-Cole and shot in response to that attack, Smith-Cole testified that defendant was the aggressor and produced his firearm *before* the confrontation became physical. Smith-Cole testified that after Cutts began to run away from defendant, defendant deliberately pointed the gun with two hands, squinted his eye as if trying to aim, and fired. Cutts was struck in the neck. The jury was free to believe Smith-Cole, see *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998) ("It is the province of the jury to determine questions of fact and assess the credibility of witnesses."), and defendant does not address why this Court should deem Smith-Cole's testimony as being patently unbelievable. Therefore, defendant has not shown that the verdict is against the great weight of the evidence.

Regarding defendant's related claim that the evidence was insufficient to support his conviction, the fact that there was conflicting evidence is of even less importance because "[a]ll conflicts with regard to the evidence must be resolved in favor of the prosecution." *Wilkens*, 267 Mich App at 738. Because Smith-Cole's testimony would allow the jury to conclude beyond a reasonable doubt that defendant acted with malice and without justification when he fired the shot that killed Cutts, there was sufficient evidence to support his conviction of second-degree murder.

## III. OFFENSE VARIABLE 9

Defendant next argues that the trial court erroneously scored Offense Variable (OV) 9 at 10 points instead of zero points. We disagree.

We review a trial court's factual determinations with respect to the scoring of offense variables for clear error, and those findings must be supported by a preponderance of the evidence.

*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A factual finding is clearly erroneous when the reviewing court is left "with a definite and firm conviction that a mistake has been made." *People v McElhaney*, 215 Mich App 269, 273; 545 NW2d 18 (1996).

OV 9 addresses the number of victims. Defendant was assessed ten points for the OV. Ten points are properly scored when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death." MCL 777.39(1)(c). Conversely, zero points are appropriate when "fewer than 2 victims . . . were placed in danger of physical injury or death." MCL 777.39(1)(d). "[E]ach person who was placed in danger of physical injury" is considered a "victim." MCL 777.39(2)(a).

The trial court adopted the facts as argued by the prosecutor, who asserted that Smith-Cole and Cutts were next to each other and running away from defendant at the time of the shooting. At trial, Smith-Cole testified that after defendant wrestled the gun away from Cutts, he and Cutts we "running" away from defendant with the two of them "on the side of each other now." Smith-Cole testified that he and Cutts were together when running. Consequently, because of their proximity at the time of the shooting, the court did not err by concluding that both Smith-Cole and Cutts were placed in danger of physical injury or death. See *People v Kimble*, 252 Mich App 269, 274; 651 NW2d 798 (2002) (holding that two people next to the person shot also were placed in danger of injury or loss of life), aff'd 470 Mich 305 (2004). Therefore, the scoring of OV 9 at 10 points was proper because there were two "victims" in this case.

## IV. STANDARD 4 BRIEF

In a pro se Standard 4 Brief, defendant raises numerous additional issues, none of which has any merit.

### A. JURY INSTRUCTION

Defendant argues that the trial court erred when it failed to sua sponte instruct the jury that it could convict defendant of the lesser included offense of voluntary manslaughter. Defendant's argument fails for two primary reasons.

First, this issue is waived. Waiver is "the intentional relinquishment . . . of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id.* (quotation marks and citation omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *Kowalski*, 489 Mich at 503.

In this case, after the trial court instructed the jury, defense counsel clearly expressed that he was satisfied with the instructions. Such an expression is an unequivocal indication that counsel approved of the instructions. *Id.* at 505. Consequently, the waiver leaves no error for this Court to review. *Id.* at 504.

Second, to the extent that this issue is not waived, it is unpreserved. We review unpreserved instructional issues for plain error affecting defendant's substantial rights. *Kowalski*, 489 Mich at 505. Defendant's assertion that a trial court has a duty to sua sponte give such an

instruction is not supported by the authority he cites. He relies on *People v Jones*, 419 Mich 577; 358 NW2d 837 (1984), but he miscomprehends our Supreme Court's holding in that case. In *Jones*, the defendant was charged with murder. *Id*. at 578. Despite that the defendant's theory was that the death was accidental, the trial judge sua sponte and inexplicably provided an instruction on *voluntary* manslaughter, and then gave a misleading instruction on that. *Id*. at 580. The Supreme Court found reversible error. *Jones* thus stands for the proposition that while a trial court does *not* have a sua sponte duty to provide a manslaughter instruction in a murder case, if it does decide to provide one on its own volition, it must be an instruction that is rationally supported by the evidence. The trial court was not required to sua sponte instruct the jury on manslaughter in this case.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

We note that defendant has cited to the record in support of his claims, but has provided minimal legal support for his myriad claims. Because, if a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned, *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999), we could consider most of defendant's claims of ineffective assistance of counsel abandoned. Nevertheless, to be thorough, this Court has addressed below each of defendant's claims, except his argument that trial counsel was ineffective when he failed to request a jury instruction for voluntary manslaughter as we addressed and rejected this claim in Part I of our opinion.

## 1. FAILURE TO FILE MOTION UNDER MCR 6.201(J)

Defendant contends that defense counsel was ineffective by failing to take steps to hold the prosecution accountable for failing to provide certain records during the course of discovery. MCR 6.201(A)(2) provides that, upon request, a party must provide to the other party "any written or recorded statement, including electronically recorded statements, pertaining to the case by a lay witness whom the party may call at trial, except that a defendant is not obliged to provide the defendant's own statement." Defendant avers that the prosecution failed to comply with this mandate when it failed to turn over electronic statements from Cutts's and Smith-Cole's phones. Thus, his argument is that trial counsel should have brought the violation to the trial court's attention under MCR 6.201(J). However, defendant has pointed to nothing in the record that shows that the prosecution had in its possession any electronic communications involving Cutts or Smith-Cole, let alone their phones. With no evidence that the prosecution failed to produce any existing "written or recorded statement" that it possessed, a motion citing MCR 6.201(J) would have been futile, and counsel is not ineffective for failing to raise a meritless or futile motion. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## 2. FAILURE TO INTRODUCE PHOTOGRAPHS

Defendant also argues that trial counsel should have introduced into evidence photographs of the clothing that Smith-Cole was wearing on the night of the shooting. Defendant maintains that the photographs would have shown that his clothing was not bloodied, which in turn would have cast doubt on Smith-Cole's claim that he assisted Cutts to Smith-Cole's house after the shooting and would have then affected the jury's credibility determinations regarding other portions of Smith-Cole's testimony. We need not consider this possible diminution of credibility

because defendant has failed to establish factual support for his claim that a photo of Smith-Cole's clothing would not have shown blood. Therefore, defendant has failed to prove the factual predicate for this ineffective-assistance claim, which is fatal to the claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Similarly, defendant argues that trial counsel should have introduced pictures of the gun Smith-Cole said he saw defendant use at the time of the shooting. Defendant maintains that the picture would have conflicted with other pictures "that both the prosecution and the defendant presented," which purportedly show a different type of gun. Defendant cites to nothing in the lower court record regarding where these pictures were referenced. And our review of the trial transcripts does not reveal any pictures of any gun being admitted, let alone referenced, at trial. Therefore, defendant has also failed to prove the factual predicate for this ineffective-assistance claim. See *id*.

### 3. FAILURE TO ADEQUATELY QUESTION WITNESSES

Defendant next asserts that trial counsel's performance was deficient because counsel failed to adequately question certain witnesses. Specifically, defendant argues that counsel should have asked a police evidence technician if he had collected clothing from Smith-Cole and, if he did, whether there was any of Cutts's blood on it. Defendant tacitly admits, however, that he does not know how the evidence technician would respond to such questioning. Without any basis for knowing what such a response would be, defendant cannot show that there is a reasonable probability that the result of the trial would have been any different if trial counsel had asked these questions, which is fatal to his claim.

Defendant also argues that trial counsel was ineffective by failing to ask Officer David Michelis about the prior statements Smith-Cole made to him after the shooting. Specifically, defendant claims that trial counsel should have asked Officer Michelis about Smith-Cole's purported inconsistent statement where Smith-Cole indicated at one point that defendant was *between* Cutts and Smith-Cole on Paige Avenue, instead of trailing *behind* them both, as Smith-Cole described at trial. Although counsel did not ask Officer Michelis about these particular statements, it is not clear from the record that Smith-Cole ever made these arguably inconsistent statements to Officer Michelis.[1] Therefore, defendant cannot show that counsel was ineffective

---

[1] There was a videotape of an interview *Sgt. Christopher Livingston* had with Smith-Cole, where Smith-Cole made some statements indicating that, at some point, Cutts was behind defendant, who was behind Smith-Cole. But Smith-Cole explained that, certainly, when he *first saw Cutts walking down Paige Avenue*, defendant was in front of Cutts, i.e., from an east-west perspective, defendant was "in between" Cutts and Smith-Cole. But as Smith-Cole described, this was the situation "only until he passed [Nelson's] house." This explanation makes sense considering that Cutts was coming from the west and walking down Paige in an easterly direction to get to McArthur. It is undisputed that in order to make that walk, Cutts would have to walk *past* Nelson's home, where defendant was. Thus, the fact that at some point before any altercation happened, Smith-Cole saw that Cutts was "behind" (or west of) defendant is not of any meaningful significance.

-7-

for failing to ask about these statements, and he also cannot show how he was prejudiced by the failure to ask.[2]

Defendant next asserts that trial counsel should have asked Officer Brandon Roy about "the significance of the photographic evidence he reportedly flagged," and should have asked him to identify those photographs for the jury, which defendant claims was needed because it somehow related to a picture of a gun. Defendant's argument is woefully undeveloped; he does not explain what specific "photographic evidence" he is referencing, and, as already noted, nothing was introduced at trial showing any gun. And Officer Roy testified that his only role in the investigation was to track defendant's whereabouts after the shooting through the use of cell phone technology. An appellant may not leave it to this Court to unravel and elaborate his arguments or search for a factual basis to sustain or reject his position. *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Accordingly, this claim cannot succeed.

Next, defendant claims that trial counsel provided ineffective assistance by not cross-examining Detective Jeff Ala. Detective Ala's testimony was very brief; he merely testified that he created a search warrant request to search the premises at 20100 Concord in Detroit and obtained a warrant for a cheek swab for defendant's DNA. Defendant again focuses on the "gun" and suggests that counsel should have asked Detective Ala if he had seized Nelson's gun and whether it had been used in the shooting. Defendant's continued focus on this gun is perplexing. There is no dispute that defendant shot and killed Cutts—defendant even admitted to the shooting. The type of gun he actually used appears to be irrelevant. Because of this extremely tenuous relevance, defendant cannot show how his trial counsel's decision to not explore this topic with any witness fell below an objective standard of reasonableness.

Defendant further argues that counsel should have asked Smith-Cole about how his trial testimony differed from his prior statement to the police, in which he stated that defendant was between Cutts and Smith-Cole instead of being behind both of them. Defendant's position is not supported by the record. Defense counsel did question Smith-Cole about the relative positions of him, Cutts, and defendant quite thoroughly. Counsel got Smith-Cole to admit multiple times that he told the police that when he first saw Cutts, defendant was in front of Cutts, i.e., between Cutts and Smith-Cole. Accordingly, because defense counsel did what defendant claims counsel should have done, this ineffective-assistance claim necessarily fails. See *Hoag*, 460 Mich at 6.

Defendant also argues that defense counsel should have asked Officer Roy, or any officer, why they did not include Smith-Cole's cell phone on any search warrant or make any attempts to access Cutts's cell phone. There is nothing in the record to indicate what would have been found in any such searches of the phones.

### 4. REMAINING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that trial counsel was ineffective by failing to request that the court rule on a motion defendant filed *in propria persona* to preclude the testimony of Cutts's mother,

---

[2] We note that defense counsel did make inquiries of Officer Michelis about other things Smith-Cole said to him, eliciting admissions from him that potentially favored defendant.

Marguerite Cutts, or object to the mother's testimony at trial. The record shows that counsel *did* ask the court to rule on defendant's motion at a pretrial hearing on May 23, 2018. And, counsel's failure to thereafter object to Marguerite's testimony at trial did not fall below an objective level of reasonableness.

At trial, Marguerite testified that, at the hospital, she identified the person who was shot and killed as her son, 16-year-old Kenneth Cutts, Jr. The relevance and probative value of the testimony was to establish that the person who died was Cutts. MRE 403 allows for relevant evidence to nonetheless be precluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice. Unfair prejudice may exist when it would lead the jury to decide on an improper basis, such as emotion or sympathy. *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994). Here, any amount of sympathy or prejudice injected by the mother calling Cutts her "baby" or crying during her testimony (although it is not clear that she did cry) was minimal. Moreover, the jury was instructed to not allow emotions such as sympathy to influence its decision, and jurors are presumed to follow their instructions. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Therefore, counsel was not ineffective for failing to object to the testimony. See *Ericksen*, 288 Mich App at 201.

Defendant also argues that trial counsel should have objected to the prosecutor's comments during closing arguments where the prosecutor referred to the ages of Cutts and defendant. During closing argument, the prosecutor did mention several times that defendant was "a man in his mid to late 20s" and that Cutts and Smith-Cole were "17 year old kids." Defendant correctly points out that a prosecutor may not appeal to the emotions and sympathies of the jurors. *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). The prosecutor's mentioning the ages, however, appears to have been for reasons other than invoking the sympathies of the jury. For example, the prosecution argued that because defendant was claiming self-defense, it had to prove that defendant did not reasonably fear for his life or serious physical injury. The prosecutor mentioned that even if the jury accepted defendant's testimony as true, the killing did not constitute self-defense because the jury needed to consider the "relative strength" of the parties involved, which included the fact that Cutts and Smith-Cole were "kids," while defendant was a full-grown man. This is a valid consideration. The prosecutor also thought that the age of Smith-Cole was particularly important because his lack of maturity might explain why some of Smith-Cole's prior statements, which the defense used to impeach Smith-Cole, may not have been "in lock step with each other." This also is a valid consideration, which did not call on the jury to convict on the basis of sympathy or emotion. Because the references were not used to inflame the jury's emotions, they were not improper, and it was reasonable to not object. See *Ericksen*, 288 Mich App at 201.

To the extent that some of the references could be perceived as evoking the jury's sympathies, defendant cannot show how these prejudicial effects affected the outcome of the trial. The evidence of defendant's guilt was overwhelming. Defendant himself admitted to shooting Cutts, fleeing the scene, and hiding from police. And given the fact that Cutts was shot in the back of the neck, purportedly while trying to run away, defendant's claim of self-defense dissipates because any such claim requires the person to have an honest and reasonable belief that his actions were "*immediately* necessary." See MCL 780.972(1)(a) (stating that self-defense is allowed to prevent "imminent death" or "imminent great bodily harm"). Based on the testimony and evidence

at trial, defendant cannot show that there is a reasonable probability that counsel's failure to object to the prosecutor's comments affected the outcome of the trial.

Defendant also asserts that trial counsel's performance was deficient because counsel failed to take the appropriate steps to ensure that (1) Doug Draper, (2) Anthony Nelson, (3) Nelson's cousin and, (4) Stephanie Stager testified at trial. This claim fails for the basic reason that the record does not show what these witnesses would have stated if they had testified at trial, and it is thus impossible to know if or how these witnesses' testimony would have affected the jury's determinations. Accordingly, having failed to show how he was prejudiced by the witnesses not testifying, defendant's ineffective-assistance claim necessarily fails.

Defendant's claim that counsel should have asked for the jury to be instructed with M Crim JI 5.12[3] fails as well. The prosecutor is required to attach to the filed information a list of all witnesses it knows of who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers. MCL 767.40a(1). The prosecutor is also required to send defendant, or his counsel a list of all witnesses the prosecutor intends to call at trial. MCL 767.40a(3).

Stephanie Stager and "Nelson's cousin" do not appear on any list of endorsed witnesses. While Stager's name appears on the prosecution's list as a potential witness ("Nelson's cousin" appears on none) there is no "check mark" next to her name. The witness list clearly provides that only those names with a check mark next to them are to be construed as endorsed witnesses. For these two witnesses, there was no basis for counsel to request M Crim JI 5.12.

Doug Draper and Anthony Nelson are not endorsed witnesses on the prosecution's witness list, but their names do appear on defendant's witness list. Upon request, the prosecutor is obliged to assist a defendant in locating and serving witnesses. MCL 767.40a(5). It may be appropriate to provide M Crim JI 5.12 when a defendant requests such assistance, but the prosecutor fails to provide reasonable assistance. *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003).

With respect to Anthony Nelson, it does not appear that defendant requested any assistance from the prosecution. Defense counsel, in fact, explained to the trial court that he had personally met with and served Nelson with a subpoena to appear and testify and had spoken to Nelson multiple times. Having not requested any assistance in this matter from the prosecution, M Crim JI 5.12 would have been inappropriate with respect to Nelson.

The record discloses that the prosecution did, however, make reasonable efforts to locate Draper. Sgt. Livingston, the officer in charge, testified at trial:

> [The prosecutor] had advised me that [defense counsel] had a couple subpoenas, one of them was for Mr. Draper. Those subpoenas were e-mailed to me. I printed them off. I physically went to Mr. Draper's house. I knocked on the

---

[3] M Crim JI 5.12 states, "_____ is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case."

door.  A gentleman who identified himself as Mr. Draper, I gave him the subpoena, advised him that we'd be going to trial starting on this date and he would be needed on the date, I believe yesterday.  He advised me that he would be there.  He gave me a phone number to contact him with in case there were any problems with that Thursday and he had to be moved, so due to yesterday's prosecution running late, I tried contacting him.  The phone number is now bad.  I actually sent a patrol car over to knock on the door.  We spoke with his roommate who advised him yesterday he wasn't needed yesterday for testimony and that he was to come back today.  The roommate then called Mr. Draper and said you're not needed in court today, you'll be needed on Friday.  This was done in front of the officer.  Mr. Draper did not show up today.  The only phone number I had is the one that is no longer in service, so I cannot reach Mr. Draper at this time.

Accordingly, the record does not support the conclusion that the police or prosecution did not make reasonable efforts to secure Draper's presence at trial.  As a result, an instruction under M Crim JI 5.12 would not have been warranted, and counsel was not ineffective for failing to request the instruction.

Defendant next argues that trial counsel should have taken steps to address Smith-Cole's perjured testimony.  This argument fails because there is no evidence that Smith-Cole provided perjured testimony.  Defendant takes exception to the prosecution's attempt to have Smith-Cole clarify the statements he made to the police, in which he said that at some point, defendant was in between Cutts and Smith-Cole.  But there is nothing to show that the clarification was not indeed truthful.

Defendant also avers that the prosecutor admitted to allowing Smith-Cole to testify falsely about observing defendant tap the gun on Cutts's head.  But defendant does not identify where in the transcript this admission occurred.[4]  Because defendant has not established the factual predicate for this claim, his argument fails.  See *Hoag*, 460 Mich at 6.

Finally, defendant maintains that the cumulative effect of all the errors associated with counsel's performance warrants a new trial.  But because we have concluded that no errors exist, "a cumulative effect of errors is incapable of being found."  *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

## C.  RIGHT TO BE HEARD

Defendant argues that he was denied the constitutional right to be heard by the trial court on two occasions.  Because defendant never claimed that any right was violated when the trial court denied him the opportunity to address the court, this issue unpreserved issue is reviewed for

---

[4] Indeed, defendant acknowledges that the transcripts do not contain any such admission, but he claims that the admission is contained in the audio transcript.  Notably, however, he does even provide an actual quote of this admission or a timestamp from the audio transcript for when the admission allegedly occurred.

plain error affecting defendant's substantial rights. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007).

Defendant takes exception to two instances where the trial court did not allow him to address the court while he was represented by counsel, once at a hearing and once during trial. The first occurrence was at a March 28, 2018 pretrial hearing, while defense counsel was arguing a motion to quash the first-degree murder charge on account of there being no premeditation and deliberation. During oral argument on the motion, the court was questioning the prosecutor about the events of the incident, as related in its brief and defendant interjected "no." The trial court stated, "No, Mr. Walker. Not at this time." Oral argument continued with both sides presenting their positions and at one point the following exchange took place:

> *THE COURT*: Mr. Walker, you can put your hand down because I'm not going to allow you to speak during this hearing. You are on trial, sir, and any statements that you may say today may affect or jeopardize your trial. So, unless you discuss whatever you're about to say with your attorney, I'm not going to entertain any comments from you at this point, unless your attorney gives you permission to speak, sir.

> Counsel, his comments are being recorded. If you want to talk to him in the lock up or somewhere else, these are live microphones.

> *[Defense Counsel]*: We're going to talk a little later.

> *[Defendant]*: Can I please say—

> *[Defense Counsel]*: Not this minute.

> *[Defendant]*: Your Honor, can I—

> *THE COURT*: Mr. Walker, no. I'm not going to allow it. You have an attorney.

> *[Defense Counsel]*: Not this minute.

> *THE COURT*: You have an attorney, sir.

Thus, while the trial court did stop defendant from addressing the court, it not put a blanket prohibition on defendant's ability to address the court, but rather indicated that communication would be permitted if defense counsel consented. As the court stated, it was concerned that defendant may unknowingly make statements that might incriminate himself. And, at the next pretrial hearing, defense counsel provided his consent for defendant to address the trial court, and the court allowed it. During this time, defendant was able to raise a variety of legal issues he thought necessary to address. Therefore, it is clear that defendant was not ultimately denied the opportunity to address the court.

Regarding the incident at trial, defense counsel had asked the trial court for a directed verdict on the first-degree murder charge on the basis of there being no evidence of premeditation

-12-

and deliberation. In response, the prosecutor argued that when the evidence was viewed in a light most favorable to the prosecution, a reasonable fact-finder could conclude that defendant had murdered Cutts with premeditation and deliberation. The trial court then gave its ruling during which the defendant interrupted by saying, "excuse me, your Honor." The trial court did not respond to defendant and instead continued with its ruling. After the trial court concluded with its ruling defense counsel asked if "[a]t this time, would the court be gracious enough to hear anything that [defendant] needs to say?" The trial court responded:

> Only if he's going to testify in this case, otherwise all I want to hear is whether or not he's going to testify. We'll put him under oath and if he wants to say anything regarding this case, he can testify in front of the fact finder. Otherwise, I need a decision whether or not he's testifying or not[.]

Once again, defendant sought to address the court at a time it was deciding whether there was sufficient evidence to support the charge of first-degree murder. Because these were purely *legal* issues, it is hard to imagine that defendant could have added anything meaningful to the argument. Indeed, on appeal, he does not even contend that he would have addressed the issue before the court. Instead, he suggests that he was going to raise "legal issues," such as his desire for a voluntary manslaughter instruction. Because the discussions at trial were pertaining to whether there was sufficient evidence (either introduced at the preliminary examination or at trial) to support the charge of first-degree murder, it is unlikely that defendant at this precise moment wanted to address the court about a completely unrelated topic, i.e., his dissatisfaction with trial counsel for not pursuing a strategy based on voluntary manslaughter.

Moreover, at the May 23, 2018 pretrial hearing, the trial court allowed defendant to raise numerous issues *in propria persona*, including defendant's belief that defense counsel had been providing ineffective assistance. Notably, nowhere in defendant's argument to the court did he aver that counsel, against defendant's wishes, refused to implement a strategy based on voluntary manslaughter. Thus, the entire premise behind defendant's issue on appeal is undercut by the fact that he was allowed to raise any legal issues with the trial court he desired. Any assertion on appeal that he was denied the opportunity to raise these types of issues with the trial court is without merit.

## D. ERRORS IN THE TRANSCRIPT

Defendant further argues that the written transcripts of the proceedings have numerous errors, including where it says he testified that he "went into a regular" instead of that he "went into a rage." He maintains that this error caused him to suffer prejudice in seeking postconviction relief. While defendant claimed in a postconviction motion that some errors existed in the transcripts, he never argued that there was an error in his testimony regarding the use of the word "regular" or "rage." Therefore, the issue is not preserved. See *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996) ("An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground."). We review this unpreserved issue for plain error affecting defendant's substantial rights. *Hanks*, 276 Mich App at 92.

In a postconviction motion, defendant requested copies of the audio recordings of the trial proceedings. Notably, the motion did not actually request any corrections to the certified

transcript; the motion also did not refer to any error with regard to the words "rage" or "regular" in defendant's testimony. Instead, defendant merely averred that an audio recording would:

> enable the defendant to raise the basis for the knowing use of false or perjured testimony which were omitted from the trial record as well as the -- or any indications of the victems [sic] mother crying as she provided unnecessary testimony in the matter and lastly the improper comment by the prosecution in closing argument that the lawyer also failed to object to, all of this evidence has been omitted from the paper transcript.

The trial court denied the motion. The court ruled that defendant did not cite any authority supporting his prayer for relief and that to the extent the request was considered to be a motion, defendant, contrary to the court rules, failed to provide a brief citing any authority. The trial court also stated that to the extent defendant's challenge to the accuracy of the trial transcripts may be considered a motion to settle the record, such a motion was to be filed at the Court of Appeals instead of the trial court.

Certified transcripts of proceedings are presumed to be accurate, but that presumption may be rebutted. *People v Abdella*, 200 Mich App 473, 475-476; 505 NW2d 18 (1993). In order to be entitled to relief and to overcome the presumption that certified trial transcripts are accurate, a defendant is required to "(1) seasonably seek relief; (2) assert with specificity the alleged inaccuracy; (3) provide some independent corroboration of the asserted inaccuracy; [and] (4) describe how the claimed inaccuracy in transcription has adversely affected the ability to secure postconviction relief." *Id*. at 476. The independent corroboration requirement may be satisfied, for example, by providing "affidavits of witnesses, trial spectators, police officers, court personnel, or attorneys" or by referring to "trial circumstances that demonstrate the position of the petitioner." *Id*. at 476 n 2.

Defendant has not satisfied all of these requirements. First, while it seems that defendant seasonably moved in the trial court,[5] it is questionable that he sought any "relief." As previously indicated, defendant's motion did not request that any corrections be made to the certified transcript, and defendant did not make any allegation regarding an incorrect word being transcribed in his testimony. Second, defendant has not provided any independent corroboration to support his assertion that the word "regular" was erroneously transcribed for the word "rage" in his testimony. While defendant did file an affidavit with his January 10, 2019 motion, the affidavit focused on other matters and did not refer to his testimony.[6] The use of the word "regular" suggests

---

[5] We note that the trial court was mistaken when it stated that such a motion is to be filed at the Court of Appeals. MCR 7.210(B)(2)(a) states that a motion to settle the record is to be filed "with the trial court or tribunal clerk." But we will not reverse if the trial court came to the correct result, albeit for the wrong reason. See *People v Witherspoon*, 257 Mich App 329, 335; 670 NW2d 434 (2003).

[6] Specifically, defendant in his affidavit averred that the transcript (1) did not denote Cutts's mother as crying during her testimony; (2) did not mention the exchange between the prosecutor and

-14-

that an error occurred in transcription because an adjective, such as "regular," with no accompanying noun, is facially inaccurate. However, the transcript also shows that defendant's testimony was cut off:

> *A.* Yeah, I gave it with all my might, all my adrenaline, I went into a regular --
>
> *Q.* Okay. So you spun around and there he was, right?

With defendant's testimony being cut off, there is no way to ascertain what else defendant might have been saying to make the sentence complete. For instance, defendant may have been saying, "I went into a regular *spin*," or "I went into a regular *defensive posture*," or any other appropriate noun or noun phrase. Therefore, for these reasons, defendant has not met the independent-corroboration requirement.

Third, defendant has failed to show how the claimed inaccuracy adversely affected his ability to secure postconviction relief. Even assuming his actual testimony was that he "went into a rage," this change in the transcript is inadequate to substantively change the analysis for any of his issues on appeal. This change only affects any issue related to whether voluntary manslaughter was appropriate, which implicates the ineffective-assistance issues previously discussed in Parts I and IV of this opinion and the jury instruction issue previously discussed in Part IV of this opinion. By not satisfying all of the requirements of *Abdella*, defendant has not shown the existence of any plain error that affected his substantial rights, and his claim on appeal fails.

## E. DUE-PROCESS VIOLATION

Defendant argues that the prosecution violated his constitutional rights by suppressing evidence that it had a duty to disclose. This issue is unpreserved because defendant never raised it in the trial court and we thus review this issue for plain error affecting defendant's substantial rights. *Hanks*, 276 Mich App at 92.

"A criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about defendant's guilt." *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005); see also *Brady v Maryland*, 373 US 83, 87; 83 SCt 1194; 10 LEd2d 215 (1963). In order to establish such a due-process violation, a defendant must prove the following:

> (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable

---

defendant where defendant asked the prosecutor why he had allowed Smith-Cole to perjure himself; and (3) did not mention a particular comment the prosecutor made during closing argument.

probability exists that the outcome of the proceedings would have been different. [*Cox*, 268 Mich App at 448.]

The first two items that defendant argues should have been "preserved" and turned over to the defense are a swab of Nelson's gun and digital records of Smith-Cole's and Cutts's cell phones. There is nothing in the record to show that the prosecution possessed any such evidence. While exculpatory evidence needs to be disclosed, the duty does not extend to seeking out and finding exculpatory evidence. *People v Sawyer*, 222 Mich App 1, 6; 564 NW2d 62 (1997). Therefore, any aspect of defendant's argument requiring the police to have performed certain testing or investigation fails.

Regarding the audio and video recordings of the various police vehicles that were involved in the investigation, there is nothing in the record to show that any such recordings contained anything that was favorable to the defense. At a pretrial hearing, defendant reiterated his request to have any recordings from the police vehicles turned over. The trial court agreed that any police recordings of any statements Smith-Cole made needed to be turned over. Then, the following exchange occurred:

> *MR. WALKER*: Yeah, I asked for a copy of it and you granted my [request] . . . to receive the video dash cam footage, your Honor, from the police car where, that pulled to the scene, and on the video it showed that [Smith-Cole] actually walked near the car where the dash cam --

> *THE COURT*: Stop right there, Mr. Walker.

> Is there audio that goes along with the video, do you know?

> *[The Prosecutor]*: Judge, I don't know the answer to that, as I'm standing here.

> *THE COURT*: If there is any audio that goes along with the video, it's to be turned over.

> *[Defense Counsel]*: Thank you.

> *[The Prosecutor]*: Thank you.

> *[Defense Counsel]*: Thank you, Judge. I did play the video. There is no audio on the video.

> *THE COURT*: Okay.

> *[Defense Counsel]*: There is [a] possibility there might be another camera inside the car. If so, I would ask counsel to at least investigate, ask about it, and if it's there, to produce it.

> *[The Prosecutor]*: Such that it exists, I will do that.

-16-

*THE COURT*:  All right.  Turn over all video and audio discovery that you have.

The record shows that at least one police vehicle video was turned over to the defense.  It also is clear that the prosecution agreed to look into whether any other video or audio recordings existed.  There is nothing in the record to suggest that the prosecution's search did not happen or that such evidence was discovered yet withheld from the defense.  Accordingly, defendant's claim related to any other police vehicle recordings is based on mere supposition, which is insufficient to support a *Brady* due-process claim.  See *Wood v Bartholomew*, 516 US 1, 6; 116 SCt 7; 133 L Ed 2d 1 (1995) (stating that "mere speculation" is inconsistent with the applicable standards for determining if a due-process *Brady* violation has occurred).

Affirmed.

/s/ James Robert Redford
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto